**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JAMES G. WONG, DANIEL R. AND | ) | |
| WANDA D. JENSEN, and TERRY M. | ) | |
| LOVETT (f/k/a TERRY M. BROOKS), | ) | |
| individually and on behalf of all those | ) | |
| similarly situated, | ) | |
|       Plaintiffs, | ) | |
| v. | ) | No. 10-1038-CV-W-FJG |
| | ) | |
| BANN-COR MORTGAGE, et al., | ) | |
|       Defendants. | ) | |

## ORDER

Pending before the Court are (1) Defendants' Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction (Doc. No. 31); (2) Plaintiffs' Motion for Leave to File Sur-Reply to Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 163); (3) Various Defendants' Motions to Dismiss for Lack of Standing (Doc. Nos 12, 124, 142, and 172), together with the joinders of many other defendants (Doc. Nos. 28, 33, 51, 116, 129, 130, 137, 148, 149, 155, 235 and 243); (4) Plaintiffs' Motion for Extension of Time to File a Response to Doc. No. 235 (Doc. No. 245); (5) Defendant Sovereign Bank's Motion to Dismiss Plaintiffs' Complaint as Preempted by Federal Law (Doc. No. 14); (6) Plaintiffs' Motion for Leave to File Sur-Reply to Motion to Dismiss Based on Preemption (Doc. No. 161); (7) Defendant U.S. Bank National Association's Motion to Dismiss Plaintiffs' Complaint (Doc. No. 29), together with the joinders of other defendants (Doc. No. 51); (8) Defendant JPMorgan Chase Bank, N.A., as Former Trustee's Alternative Motion for More Definite Statement (Doc. No. 149); (9) Wilmington Trust Company's Motion to Dismiss (Doc. No. 178); (10) The Moving FirstPlus Trusts' Motion to Dismiss Plaintiffs' Petition for Lack of Personal Jurisdiction (Doc. No. 239); (11) The Moving Empire Funding Trusts' Motion to Dismiss Plaintiffs' Petition for Lack of Personal Jurisdiction (Doc. No. 241); and (12) Cityscape Home Loan Owner Trusts' and Trustee's Motion to Dismiss Plaintiffs'

Complaint for Lack of Jurisdiction (Doc. No. 246).

## I.  Background

Plaintiffs John and Jeannette Schwartz and James G. Wong filed their original petition in this matter on October 31, 2000.  See Doc. No. 47, Ex. 1.[1]  The original petition brought claims under the Missouri Second Mortgage Loan Act ("MSMLA"), RSMo. §§ 408.231 et seq., alleging their subordinate lien loans originated by Bann-Cor Mortgage ("Bann-Cor") and secured by Missouri real estate violate the MSMLA.  Plaintiffs assert they are all Missouri homeowners who were charged and paid excessive loan origination and other unauthorized fees in connection with a residential second mortgage loan that they obtained from Bann-Cor.  (Doc. No. 1, Ex. 1).  Plaintiffs allege that Bann-Cor violated the MSMLA, § 408.233.1 in the course of making its Missouri loans by "charging, contracting for and/or receiving" loan origination fees in excess of the applicable 2% or 5% cap, in addition to charging a number of other fees that the MSMLA, § 408.233.1, prohibited. (Doc. No. 1, Ex. 1, ¶¶ 69-75, 114-116).  Named plaintiffs assert they were charged illegal fees that were wrapped up into their loan principal for the loans they entered into, using their Missouri residences for collateral.  Plaintiffs assert these loans were then sold or assigned to other entities, and each of the plaintiffs received monthly mortgage statements in Missouri, and made monthly payments out of Missouri bank accounts.

Plaintiffs are suing (1) Bann-Cor, the originating lender (and the lender in common for all the second mortgage loans at issue in this case); and (2) all of Bann-Cor's "downstream" assignees which purchased the loans on the "secondary market" from Bann-Cor, or an intervening assignee, shortly after Bann-Cor made the loans.  Plaintiffs seek to recover all of the interest paid in connection with the loans and damages for the losses resulting from the violations of the MSMLA pursuant to RSMo. § 408.236 and/or § 408.562.

---

[1]The Schwartz plaintiffs settled their claims against certain defendants in 2009, and are no longer parties to the case.  See Doc. No. 1, p. 3, n. 1.

On March 25, 2008, Judge John M. Torrance of the Circuit Court of Jackson County, Missouri, entered an order certifying a plaintiff class, which was defined as "All individuals who, on or after October 31, 1994, obtained a 'Second Mortgage Loan' as defined by § 408.231.1 RSMo, from Bann-Cor Mortgage, secured by real property located in Missouri." Doc. No. 47, Ex. 2, p. 19. Additionally, on May 9, 2009, plaintiffs obtained a grant of partial summary judgment on certain liability issues against Bann-Cor (among others). See Doc. No. 95, Exs. 2 and 3.

On September 21, 2010, plaintiffs requested leave to file a Sixth Amended Petition, which was granted on September 22, 2010. The Sixth Amended Petition added as a named plaintiff Terry M. Lovett (f/k/a Terry M. Brooks). Plaintiffs also named the following defendants, besides the ones listed in the Fifth Amended Petition: US Bank, NA; US Bank, NA N.D.; Wilmington Trust Company; Firstplus Home Loan Owner Trusts 1997-1, 1997-2, 1997-3, 1997-4, 1998-1, 1998-2, 1998-3, 1998-4, and 1998-5; Empire Funding Home Loan Owner Trusts 1997-1, 1997-2, 1997-3, 1997-4, 1998-1, 1998-2, 1998-3, and 1999-1; Countrywide Home Loans, Inc.; Countrywide Home Loan Trust 2001-HLV1; Cityscape Home Loan Owner Trusts 1997-2, 1997-3, and 1997-4; Cityscape Home Equity Loan Trusts Series 1997 B and 1997 C; US Bank Trust, N.A.; PSB Lending Corporation; PSB Lending Home Loan Owner Trusts 1997-3 and 1997-4; Residential Funding Company, LLC; GMAC Mortgage, LLC; J.P. Morgan Chase Bank, NA, individually and/or formerly or as successor to Banc One, NA and Chase Manhattan Bank; Home Loan Trust 1997-HI3; Amaximis Company, LLC; Amaximis Lending, LP; The Bank of New York Mellon Corporation (f/k/a The Bank of New York); Citimortgage, Inc.; Comstar Mortgage Corporation f/k/a Accubanc Mortgage Corp.; Franklin Credit Management Company; Ocwen Loan Servicing, LLC; Old Republic Financial Acceptance Corporation; Realtime Resolutions Inc.; Sovereign Bank; Wells Fargo Bank, N.A., formerly and/or as successor to Norwest Bank Minnesota, NA, First Union National Bank and/or First Union Trust

Company; and Does 47 - 100.

On October 22, 2010, defendant Wells Fargo removed the action pursuant to the Class Action Fairness Act ("CAFA"). Now, various defendants' motions to dismiss are before the Court, which will consider each in turn.

## II. Defendants' Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction (Doc. No. 31) and Plaintiffs' Motion for Leave to File Sur-Reply to Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 163)

As an initial matter, the Court will **DENY** plaintiffs' motion for leave to file a sur-reply (Doc. No. 163), as the Court finds it has sufficient information before it to make a decision on this issue.

Defendants Cityscape Home Equity Loan Trust Series 1997B and 1997C ("Cityscape Home Equity Trusts") and U.S. Bank National Association, in its capacity as Co-Owner Trustee and Indenture Trustee for the Cityscape Home Equity Trusts (collectively, "Moving Trusts") argue they should be dismissed because this Court lacks personal jurisdiction over them.

### A. Background

According to defendants, the Moving Trusts are each express trusts created under New York law. See Affidavit of Pamela Weider ¶ 5 (attached as Ex. 1 to Doc. No. 31). Defendants Cityscape Home Equity Trust Series 1997-B and 1997-C are "real estate mortgage investment conduits" ("REMICs"), created to hold pools of mortgage loans and served as conduits of payments from Missouri borrowers to their investors. Doc. No. 88, Ex. K-1, at 3; Ex. L-1, at 3. The Moving Trusts do not have any offices or bank accounts in Missouri. Ex. 1 to Doc. No. 31, ¶¶ 6, 7. Payments received by the Moving Trusts are received outside of Missouri and any payments made by the Moving Trusts are made outside of Missouri. See id. ¶ 26. The Moving Trusts have no employees or agents in Missouri and no employee or agent of the Moving Trusts has traveled to Missouri on behalf of the Moving Trusts. See id. ¶ 8. The Moving Trusts are each limited to certain specified

activities described in their respective Pooling & Servicing Agreements.  See id. ¶ 9.[2]  The Moving Trusts assert they do not have power or authority to engage in the "direct" collection of mortgage loans or the "direct" enforcement of rights under mortgages.  See id. ¶¶ 17, 20.[3]

The Moving Trusts assert they do not transact any business in Missouri, nor do they own, lease or "use"[4] real estate in Missouri.  See id. ¶¶ 10, 11.  Each of the Moving Trusts holds several thousand second mortgage loans or owner trust estates secured by real property throughout the United States.   However, defendants assert only a small percentage of loans have Missouri borrowers.  See, e.g., id. ¶ 11.[5]  The Moving Trusts assert they have not made any contracts within Missouri, have not entered into second mortgage loans in Missouri, and have not loaned money to the Named Plaintiffs or class members.  See id. ¶¶ 12, 14.  The Moving Trusts assert that a loan servicer services the loans held by the Moving Trusts under provisions of the Pooling & Servicing Agreements which afford the servicers the "full power and authority, acting alone and/or through Sub-

---

[2]The Moving Trusts do not attach their Pooling and Servicing Agreements to their motion or suggestions in support; they only attach the affidavit of Pamela Weider, who asserts the contents of same.

[3]The Moving Trusts do not explain what they mean by "direct" collection or enforcement of rights; the Court finds it likely that they engage in "indirect" actions in Missouri at the very least, which are likely controlled by agents or others working on their behalf.

[4]As will be seen below, plaintiffs argue that Moving Trusts' holding of their second mortgage loans constitutes a "use" of real estate sufficient to come within Missouri's long-arm statute.

[5]When one more closely examines defendants' documents, however, a different picture emerges.  The Moving Trusts admit that they initially held 201 Missouri loans (representing 127 loans held by Series 1997-B and 74 Missouri loans held by Series 1997-C)(Doc. No. 31, Ex. 1, ¶ 11).  The prospectus documents for the moving trust defendants disclose that the aggregate principal value of defendants' Missouri loan holdings totaled $3,693,438.47 and $2,795,177.66 for the 1997-B and 1997-C trusts, respectively.  Doc. No. 88, Ex. K-1 at 23, 27; Ex. L-1, at 24, 29.

Servicers as provided in Section 3.02 hereof, to do or cause to be done any and all things in connection with such servicing and administration which it may deem necessary or desirable" and which direct the servicer "to collect all payments called for under the terms and provisions" of the mortgage loans. <u>See</u> <u>id.</u> ¶ 16. In this case, the Moving Defendants' "servicer" was initially their affiliate or parent, Cityscape Corp. Plaintiffs argue that this servicer, in sending out mortgage statements to Missouri residents, receiving payments from Missouri residents (immediately remitted to the trusts), and in many cases likely taking collection and foreclosure actions against Missouri residents was (by the parties' express agreement) acting at all times "in accordance with the instructions of the Trustee [Defendant U.S. Bank]" on behalf of the Defendant trusts. (Doc. No. 88, Ex. K-3, at III-2, Ex. L-4 at 66). The servicer, Cityscape Corp., was registered to do business in the State of Missouri (Doc. No. 88, Ex. N), which was a specific requirement of the Moving Defendants so that it could act in the State on their behalf. <u>See</u> Doc. No. 88, Ex. K-3 at II-22; Ex. L-4, at 58.

Physical custody of the notes is with a third-party custodian located outside of Missouri. <u>See</u> Doc. No. 31, Ex. 1 ¶ 20. The Moving Trusts assert they have not directly collected payments, fees or commissions from any Missouri consumers–including the named plaintiffs and putative class members. <u>See</u> <u>id.</u> ¶ 21. The Moving Trusts assert that no one on their behalf intentionally sought out loans from Missouri for inclusion in the trusts, nor did anyone on behalf of the Moving Trusts ever travel to Missouri in connection with loans held in trust. <u>See</u> <u>id.</u> ¶ 24. The Moving Trusts assert they do not advertise in Missouri, solicit customers or business in Missouri, or have a telephone listing or an address in Missouri, nor do they have a registered agent (or any agent) in the state of Missouri. <u>See</u> <u>id.</u> ¶¶ 25, 26. The Moving Trusts assert they did not negotiate any of the underlying loans to the Named Plaintiffs or class members, are not a signatory to any of the underlying loan documentation, had no involvement in setting any of the fees or other

charges that are alleged to have been excessive and violate the Missouri Second Mortgage Loan Act or had any other involvement in connection with the making of the loans or the setting of their terms. See id. ¶¶ 28-31. The Moving Trusts further assert that, as the named plaintiffs do not allege specifically that the trustee (U.S. Bank, N.A.) holds any loans in its individual capacity, it follows that the trustee is likewise entitled to dismissal.

      B.    Standard

The party seeking to invoke the jurisdiction of a federal court bears the burden of establishing that jurisdiction exists. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 n. 3 (8th Cir. 1982)(citations omitted). "The allegations in the Complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Cantrell v. Extradition Corp. of Am., 789 F. Supp. 306, 308-09 (W.D. Mo. 1992). "To survive a motion to dismiss for lack of personal jurisdiction, the nonmoving party 'need only make a prima facie showing of jurisdiction.'" Bell Paper Box, Inc. v. U.S. Kids Inc., 22 F.3d 816, 818 (8th Cir. 1994) (quoting Dakota Indus., Inc. v. Dakota Sportwear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991)). "[T]here must . . . be some evidence upon which a prima facie showing of jurisdiction may be found to exist, thereby casting the burden on the moving party to demonstrate a lack of personal jurisdiction. Once jurisdiction has been controverted or denied, (the plaintiff has) the burden of proving such facts." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977) (internal quotation marks omitted).

A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and the Due Process Clause of the Constitution. Pecoraro v. Sky Ranch For Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003). Because Missouri's long-arm statute has been construed to permit jurisdiction to the fullest

extent permitted by the Due Process Clause, <u>see</u> <u>Porter v. Berall</u>, 293 F.3d 1073, 1075 (8th Cir. 2002), the Court will "turn immediately to the question of whether the assertion of personal jurisdiction would violate due process." <u>Id.</u>

A state may exercise personal jurisdiction over a nonresident defendant consistent with due process when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. State of Washington</u>, 326 U.S. 310, 316 (1945)(quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)). The defendant's contact with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980). A party may anticipate being haled into court in a particular jurisdiction if it "purposefully directed" its activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985). Furthermore, the contacts with the forum state must be more than random, fortuitous or attenuated. <u>Id.</u> at 475. In addition, the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." <u>Id.</u> at 474, citing <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).

With these principles in mind, the Court looks at five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. <u>Pecoraro</u>, 340 F.3d at 562. The first three factors are closely related and are of primary importance, while the last two factors are secondary. <u>Id.</u>

Two types of personal jurisdiction exist: general and specific. If the exercise of jurisdiction does not depend on the relationship between the cause of action and the

defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 n.9 (1984). General jurisdiction is only applicable if the defendants' contacts with the forum state are continuous and systematic. Id. at 414. If, on the other hand, the cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. Id. at 414 n.8.

3. Analysis

Defendants allege that even if plaintiffs were permitted to rest on the allegations in the sixth amended petition, the sixth amended petition fails to include a single allegation as to the Moving Trusts' particular contacts with the state of Missouri, and is thus insufficient under Twombly. Instead, plaintiffs have made generalized allegations as to all assignee defendants, not specific allegations as to each defendant. The Court finds that this problem can be cured by granting plaintiffs leave to amend their complaint, as will be discussed later in this Order in relation to the various parties' motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Court will now turn to the issue of whether plaintiffs' assertion of jurisdiction violates due process. With respect to the five-factor test, defendant Moving Trusts assert that the nature, quantity and relationship between the cause of action and their contacts with Missouri are tenuous at best, as Moving Trusts did not impose the allegedly excessive origination fees, closing costs, or other settlement charges, and Moving Trusts did not make any loans to the plaintiff class, did not solicit class members to be borrowers, did not negotiate or sign any of the underlying loans, and had no involvement in setting the fees giving rise to plaintiffs' claims; instead, plaintiffs' claims against them are in their assignee capacity only, and plaintiffs cannot rely on defendant Bann-Cor's conduct as a means of subjecting other defendants to this Court's jurisdiction, because "it is hornbook law that [e]ach defendants' contact with the forum State must be assessed individually." Calder,

465 U.S. at 790.[6]   Further, defendant Moving Trusts argue that their relationship to the forum state should be evaluated in relation to the small percentage of Missouri real estate loans assigned to the Moving Trusts, as Moving Trusts did not seek out loans from Missouri for inclusion in the securitizations, nor did they travel to Missouri in connection with same. Additionally, they argue that the nature of the security interest reflected in the real estate is insufficient to create a contact as Missouri is a state in which the law requires deeds of trust, and the mortgage holder has no beneficial interest in the real estate, and rather holds only a debt instrument (Fincher v. Miles Homes of Mo., Inc., 549 S.W.2d 848 (Mo. 1977); R.L. Sweet Lumber Co. v. E.L. Lane, Inc., 513 S.W.2d 365 (Mo. 1974)).   Moving Trust defendants further argue that as the interest of Missouri in providing a forum for its residence and the convenience of the parties are only secondary considerations, personal jurisdiction should be found to be lacking.

Plaintiffs argue in response that the loan servicers ought to be considered agents of the moving defendants.  The Court concurs with Judge Smith's well-reasoned opinion in Gilmor v. Preferred Credit Corp., 2011 WL 111238, *3 (W.D. Mo. Jan. 13, 2011), in which Judge Smith found in a similar factual setting that the servicers could be found to be agents of trusts, finding:

> The servicing agents did not collect loan payments and keep them: they collected loan payments, kept a portion as payment for their services, and remitted the balance to the trusts.  Thus, whether on their own or through others acting on their behalf, the trusts have purposely directed activity into

---

[6]In response, plaintiffs argue that Schwartz v. Bann-Cor Mortgage, 197 S.W.3d 168, 178 (Mo. App. 2006) found that plaintiffs' "claims against the assignee defendants are not foreclosed by any legal provision," and thus if Missouri courts have jurisdiction over Bann-Cor, they also have jurisdiction over assignees like the Moving Defendants. The Court concurs with Judge Smith, who found in Gilmor v. Preferred Credit Corp., 2011 WL 111238, *3 (W.D. Mo. Jan. 13, 2011), that each defendant's contacts must be assessed separately.  Plaintiffs also attempt to use alter ego or predecessor/successor liability theories to impute jurisdiction on the Moving Trust defendants; however, it does not appear from the record that these defendants are alter egos of or successors to Bann-Cor, and thus the Court rejects this theory.

> Missouri to collect and enforce the loans. The nature of the loans as second mortgages is also significant, as the trusts (on their own or through others designated to act for them) would reasonably expect to be involved in litigation in Missouri to enforce their rights.

Id. Plaintiffs further argue quite persuasively that Lakin v. Prudential Sec., Inc., 348 F.3d 704, 709 (8th Cir. 2003), directs a different approach to assessing the amount of defendants' involvement in the state of Missouri; instead of considering the percentage of a company's business or assets in the given state, the proper "focus is on whether the defendant's activity in the forum state is continuous and systematic," considering the value of the loans in Missouri, the duration of the relationship, and the fact that the trusts have liens on real property. Id. at 709-10 (cited in Gilmor, 2011 WL 111238, *3). Here, plaintiffs note that moving defendants initially held 201 Missouri loans, in the aggregate amounts of $3,693,438.47 for Series 1997-B and $2,795,177.66 for Series 1997-C. The Court considers these to be significant contacts with the state of Missouri, that are not random or fortuitous.

Therefore, the Court finds (1) the nature and quality of the defendants' contacts with the forum state are significant, as defendants (through their servicers acting in what appears to be an agent capacity) billed and accepted payments from Missouri residents on Missouri mortgages on a routine basis; (2) the quantity of contacts is sufficient to satisfy due process concerns; (3) the lawsuit is directly related to those contacts with the state of Missouri, as plaintiffs seek a return of interest paid on their loans; (4) Missouri has an interest in providing a forum for its residents; and (5) Missouri is a convenient location for plaintiffs (if not for defendants). See Pecoraro, 340 F.3d at 562.[7] The Moving Trusts'

---

[7]If the Court were required to fit defendant's activities into Missouri's long-arm statute, that can be accomplished as well. Plaintiffs assert that defendants "used" real property under the Missouri long-arm statute, RSMo § 506.500.1(4), as defendants use the Missouri real estate to generate proceeds through mortgage payments, as well as use plaintiffs' property to secure the promissory notes for the second mortgage loans that they hold, and as a guarantee that plaintiffs will repay their loans as agreed. The

motion to dismiss for lack of personal jurisdiction (Doc. No. 31) will be **DENIED.**

III.   **Motions to Dismiss for Lack of Standing (Doc. Nos. 12, 124, 142, and 172) and Motion for Extension of Time (Doc. No. 245)**

As an initial matter, plaintiffs' motion for extension of time (Doc. No. 245) will be **GRANTED**, and plaintiffs' response (Doc. No. 282) will be considered timely-filed.

To have Article III standing, plaintiffs must show (1) they have suffered an actual, concrete and particularized injury in fact; (2) there is a causal connection between the plaintiffs' injury and the particular defendant's alleged wrongful conduct; and (3) a likelihood that the named plaintiff's injury will be redressed by a favorable decision against the defendant. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Hodak v. City of St. Peters, 535 F.3d 899, 903 (8th Cir. 2008).

Many defendants[8] have moved to dismiss for lack of standing, as they assert that they did not have any connection to the named plaintiffs' loans.  In particular, defendants assert that they have not had any involvement in the origination or closing of the second mortgage loans to named plaintiffs, that they never purchased or held any of the named plaintiffs' loans, and that they never retained any interest, principal, or fees from the named plaintiffs in connection with their loans.  See Doc. No. 12.  The various defendants, therefore, assert that the named plaintiffs do not have Article III standing to sue them.

Plaintiffs respond that defendants' arguments do not take into account that on March 25, 2008, the Circuit Court of Jackson County, Missouri certified a plaintiff class.  Plaintiffs indicate that this suit is against one originating second mortgage lender (Bann-Cor

---

Court concurs that the Moving Trust defendants' activities fall within Missouri's long-arm statute, as they constitute a "use . . . of any real estate situated in this state." See Gilmor, 2011 WL 111238, *2, n.4.

[8]See Doc. Nos. 12, 28, 33, 51, 116, 124, 129, 130, 137, 142, 148, 149, 155, 172, 235, and 243.  The Court will not undertake to discuss the various distinctions between the many defendants, as it would not make a difference as to the outcome of this Order.

Mortgage), and the entities that acquired Bann-Cor's tainted loans. Recently, another judge in this district rejected standing arguments virtually identical to those raised in these motions. See Gilmor v. Preferred Credit Corp., 2011 WL 111238 (W.D. Mo. Jan. 13, 2011)(J. Smith). In that case, Judge Smith found that once a class had been certified, Article III's standing requirements "must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs." Id. at *6. Judge Smith further found that numerous federal courts of appeal have approved class actions where the claims stemmed from a common origin, but where some of the defendants did not interact with all named plaintiffs. Id. at *7 (citing Payton v. County of Kane, 308 F.3d 673, 675-76 (7th Cir. 2002); Moore v. Comfed Sav. Bank, 908 F.2d 834, 836 (11th Cir. 1990); Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423-24 (6th Cir. 1998); Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993)). Judge Smith, however, deemed it prudent for plaintiffs to be allowed to designate additional class representatives to help ensure the requirements of Rule 23 were met. Id.

This Court concurs with Judge Smith's well-reasoned opinion. Accordingly, defendants' motions to dismiss for lack of standing (Doc. Nos. 12, 124, 142, and 172) will be **DENIED.** Plaintiffs shall file a motion for leave to file an amended complaint designating additional class representatives on or before **June 30, 2011.**

## IV. Motion to Dismiss Due to HOLA Preemption (Doc. No. 14) and Motion for Leave to File Sur-Reply to same (Doc. No. 161)

As an initial matter, the Court will **DENY** plaintiffs' motion for leave to file a sur-reply (Doc. No. 161), as the Court finds it has sufficient information before it to make a decision on this issue.

Defendant Sovereign Bank moves for an Order dismissing plaintiff's Sixth Amended Petition due to Home Owners' Loan Act (12 U.S.C. § 1461, *et seq.*, hereafter "HOLA") preemption. Defendant Sovereign Bank asserts that it is a federally-chartered savings

association (hereafter "FSA"),[9] and as such Sovereign Bank is governed by HOLA. Defendant argues that plaintiffs' state law claims are preempted by HOLA and corresponding regulations promulgated by the Department of the Treasury, Office of Thrift Supervision ("OTS"). Defendant argues that HOLA and the OTS regulations occupy the field of regulation for lending, servicing and investment activities for federal savings associations. Defendant notes that the Supreme Court has held that OTS regulations have the same preemptive effect as federal statutes. See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982). Defendant cites 12 C.F.R. § 560.2, which by its terms "occup[ies] the entire field of lending regulation for [FSAs]." 12 C.F.R. § 560.2(a). Section 560.2(b) preempts state laws concerning the following: the "terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan"; "Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and over limit fees"; "Processing, origination, servicing, sale or purchase of, or investment or participation in mortgages"; and "Usury and interest rate ceilings to the extent provided in . . . 12 U.S.C. § 1463(g)." § 560.2(b) (4), (5), (10), and (12). Defendant further notes that under the federal regulations it is authorized to purchase home loans. 12 C.F.R. § 560.30.

Defendant Sovereign argues that plaintiffs' sixth amended petition seeks to hold it liable under three theories: (1) Sovereign is an assignee-purchaser of Bann-Cor loans made to absent putative class members (Compl. ¶¶ 57, 59, 120); (2) Sovereign charged, collected, and received certain challenged fees in connection with those loans (Comp. ¶¶ 57, 59, 73-74, 120); and (3) Sovereign charged, collected, and received interest in connection with those loans (Compl. ¶¶ 57, 59, 73-74, 120). Defendant asserts that these

_____

[9]Plaintiffs concede this in their Sixth Amended Petition, Doc. No. 1, Ex. 1, ¶ 57.

claims fall squarely within the activities preempted by HOLA and the OTS regulations.

In response, plaintiffs note that this Court has previously rejected similar arguments made in relation to National Bank Act ("NBA") preemption. As stated previously by this Court:

> As all parties agree, defendant Bann-Cor actually made the loans that are the subject of this dispute. Plaintiffs' claims against all other defendants appear to be based upon assignee liability. See, e.g., 15 U.S.C. §1641(d) . . . . Because Bann-Cor is not a national bank, state law usury claims can be brought against it, and the general rules of assignee liability provide that the assignee defendants can be derivatively liable to plaintiffs.
>
> The Court agrees with plaintiffs that NBA §§ 85 and 86 do not apply to the derivatively liable assignees of loans.

Schwartz v. Bann-Cor Mortgage, Case No. 03-0922, Doc. No. 76 (W.D. Mo., June 14, 2004). Other divisions of this Court have concurred with this conclusion as to NBA preemption. Baker v. Century Financial Group, Inc., Case No. 04-0201, Doc. No. 185 (W.D. Mo. December 15, 2004)(Sachs, J.); Gilmor v. Preferred Credit Corp., Case No. 04-0255, Doc. No. 206 (W.D. Mo. December 20, 2005) (Smith, J.). More recently, the Eighth Circuit found that the NBA does not preempt claims made against national banks that did not originate the loans at issue, but rather were assignee banks that subsequently purchased the loans. Thomas v. U.S. Bank Nat. Ass'n ND, 575 F.3d 794, 800- 01 (8th Cir. 2009). As discussed in Thomas, "[t]o hold otherwise would allow an originating bank to cleanse an otherwise illegal loan merely by assigning it to a national bank." Id. at 801. Instead, the Eighth Circuit applied the HOEPA rule of liability (as did this Court in considering NBA preemption in 2004), 15 U.S.C. § 1641(d), which provides "Any person who purchases or is otherwise assigned a [tainted] mortgage . . . shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage . . . ."

Furthermore, another division of this Court recently found that HOLA and the OTS regulations do not preempt claims made against FSAs. See Gilmor v. Preferred Credit

15

Corp., 2011 WL 111238, *8-9 (W.D. Mo. Jan. 13, 2011)(Smith, J.); Gilmor v. Preferred Credit Corp., 2011 WL 806014, * 1 (W.D. Mo. March 1, 2011). Judge Smith found that the same reasoning applies to both NBA and HOLA preemption; where the national banks or FSAs had not been the originator of the loans in question, the federal statutes and/or regulations do not preempt the MSMLA. 2011 WL 111238 at *9. As Sovereign (defendant both in the present matter and in Gilmor) had not made the loans in question nor did it extend credit, Judge Smith found that the claims made against it were not preempted by HOLA (noting that 12 C.F.R. § 560.2(a) applies only to "lending activities").

Although in reply defendant argues that Casey v. F.D.I.C., 583 F.3d 586 (8th Cir. 2009) compels this Court to find the MSMLA to be preempted, this Court cannot agree. The Court in Casey did not consider assignee liability at all, as the defendant in that matter was the loan originator and extended credit or refinancing on purchases of property. Id. at 589. Additionally, defendant argues that the NBA preemption cases are distinguishable as HOLA is analyzed as field preemption whereas NBA is analyzed as conflict preemption. See Munoz v. Financial Freedom Senior Funding Corp., 567 F.Supp.2d 1156, 1162 (C.D. Cal. 2008). This Court is not convinced that this distinction makes a difference in this matter, as it appears that the OTS regulations cited by defendant preempt the field of lending regulation, whereas it appears plaintiffs seek to hold defendant Sovereign liable not for its lending activity, but under the rules of assignee liability.[10]

---

[10]The Court is also somewhat reticent to distinguish HOLA from the NBA on the basis of field preemption because Congress has recently enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), HR 4173, Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010). The amendments affecting HOLA and NBA preemption become effective effective as of July 21, 2011. See Dodd-Frank Act §§ 1048; Bureau of Consumer Financial Protection, Designated Transfer Date, 75 Fed. Reg. 57,252 (Sept. 20, 2010). As of that date, HOLA and OTS preemption determinations will be made in accordance with the same standards as applicable to national banks. Further, the Dodd-Frank Act specifically states that "Notwithstanding the authorities granted under section 4 and 5, [HOLA] does not occupy the field in any area of State law," effectively eliminating the field preemptive effect of HOLA and the

Accordingly, defendant Sovereign's motion to dismiss based on HOLA preemption (Doc. No. 14) will be **DENIED.**

## V.     U.S. Bank National Association's Motion to Dismiss Plaintiffs' Complaint (Doc. No. 29) and Defendant JPMorgan Chase Bank, N.A., as Former Trustee's Alternative Motion for More Definite Statement (Doc. No. 149)

Defendant U.S. Bank National Association moves to dismiss plaintiffs' sixth amended petition under Rule 12(b)(6) because plaintiffs' allegations against it are generic and conclusory.

### A.     Standard

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of a short and plain statement is to provide defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007)(citation omitted). To satisfy this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at 570).  A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (internal quotations omitted).  On a motion to dismiss, a court's evaluation of a plaintiff's complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

Fed.R.Civ.P. 12(e) states in part, "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."

_____

OTS regulations.  The Court finds that the legal uncertainty created by this impending change in the law favors denial of defendant's motion.

Defendant U.S. Bank National Association cites to <u>Mayo v. GMAC Mortgage, LLC</u>, No. 08-00568-CV-W-DGK (March 1, 2010, Doc. No. 160), wherein Judge Greg Kays found that "Asserting a list of legal conclusions that have been fused together with a disjunctive conjunction and brought against a collection of defendants . . . is not enough to state a claim for relief that is plausible on its face under <u>Ashcroft</u>." <u>Id.</u> at p. 5 (citing <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Defendant U.S. Bank National Association argues that, similar to <u>Mayo</u>, plaintiffs here have lumped it together with all of the other "Assignee Defendants" and have made a meaningless series of general allegations (such as Sixth Amended Petition ¶ 62, "Assignee Defendants, individually and/or through their bank trustees or other trustees and/or agents, purchased the Second Mortgage Loans that Bann-Cor made to Plaintiffs and the Plaintiff Class pursuant to one or more standing agreements and/or a course of business dealing with Bann-Cor and/or on a 'secondary market' . . . ."; ¶ 64, "The ASSIGNEE DEFENDANTS, upon information and belief, were partners with and/or principals or agents of BANN-COR and/or one or more other entities and/or ASSIGNEE DEFENDANTS acting in concert with BANN-COR, including among others, FirstPlus Financial, Inc. and/or Master Financial, Inc., and/or were engaged in a joint venture and enterprise with BANN-COR and/or said other entities, and/or a conspiracy with BANN-COR and/or said other entities, to originate, exchange and exploit second mortgage loans from BANN-COR's Missouri borrowers with our [sic] regard to state law and applicable state law fee limitations, in that, among other things, the ASSIGNEE DEFENDANTS bound themselves by commitments and agreements and established relationships with BANN-COR and/or the other entities in terms of origination and underwriting criteria, loan terms and fees, and funding arrangements, and/or were otherwise so closely connected that they are jointly and severally liable for the losses arising from the unlawful loans."). Defendant U.S. Bank, therefore, requests the court

dismiss all claims alleged individually against it as a result of plaintiffs' failure to meet the pleading standards of Iqbal and Twombly.

Defendant Franklin Credit Management Corporation filed a joinder in this motion to dismiss (Doc. No. 51). Defendant Franklin Credit Management asserts that, as to it, the Sixth Amended Petition alleges plaintiff Brooks "made all of the monthly payments due under her second mortgage loan, paying the same to BANN-COR and/or to any one or more of the ASSIGNEE DEFENDANTS that purchased and/or acquired the loan, and/or that serviced and handled the loan as an agent on behalf of others including, without limitation, the MASTER FINANCIAL DEFENDANTS and/or FRANKLIN." Sixth Amended Petition, ¶ 102. Further, plaintiffs state "BROOKS continued to make monthly payments on his loan until on or about January 30, 2007, when she paid it off, and the ASSIGNEE DEFENDANTS that purchased and/or acquired the loan, and/or that serviced and handled the loan as an agent on behalf of others, including among others FRANKLIN, continued to charge and receive monthly payments through that date." Sixth Amended Petition, ¶ 103. Other than those two specific allegations (which defendant Franklin argues are vague in that the use of "and/or" means they could or could not include Franklin), plaintiffs have made no further specific allegations against Franklin. Defendant Franklin, therefore, argues that the generic factual allegations and legal conclusions made against all defendants collectively are insufficient under Iqbal and Twombly.

In a related motion, defendant JPMorgan Chase Bank, N.A., as Former Trustee ("Chase") argues that plaintiffs' Sixth Amended Petition is so vague that defendant Chase cannot respond to the allegations raised therein, given that defendant Chase had thousands of trusts for which it served as trustee, and plaintiffs have provided no indication as to which trusts allegedly held plaintiffs' loans.

Plaintiffs assert that they have sufficiently put defendants on notice of the claims against them, and that their allegations are sufficient to state a plausible claim against U.S.

Bank. Plaintiffs suggest that the use of the "and/or" statements in their sixth amended petition have spared both the parties and the Court from having to review and respond to more than 50 separate sets of allegations as to each of the defendants. Plaintiffs further suggest that this would be unnecessary given the nature of defendants' business, due to the "convoluted nature of the securitization business in which U.S. Bank and the other Assignee Defendants are (or were) engaged, the oftentimes overlapping and affiliated capacities of the loan trustees, servicers, master servicers, and other participants in the mortgage securitization industries, the use of nominees and servicers for administrative convenience, such as MERS, the free flow of the loans on the secondary market . . . ." See Doc. No. 90, p. 10. Further, with respect to the motion for more definite statement, plaintiffs assert that defendant Chase is in possession of the information needed to respond to the Sixth Amended Petition, and plaintiffs do not need to provide further specific information.

In reply, defendant U.S. Bank notes that the frequent "and/or" phrases in plaintiffs' sixth amended petition make it impossible to determine what is being alleged against any particular defendant. Defendant U.S. Bank further notes that the "convoluted nature of the securitization business" is no excuse for failing to meet the pleading standards articulated in Iqbal and Twombly. Further, in reply to its motion for more definite statement, defendant Chase asserts that it sold its Trustee business operation effective October 1, 2006, and transferred most of its records at that time. Chase further notes that plaintiffs appear to have information regarding the specific loans in their possession (noting that at Doc. No. 237, p. 5, n. 4, plaintiffs indicate their belief that Chase was named as a grantee of at least 18 class loans and that Chase filed releases for 15 of these loans). Defendant Chase indicates that, at a minimum, plaintiffs should identify the 18 class loans for which plaintiffs believe Chase was named as a grantee so that Chase could adequately prepare its responses and defenses.

The Court agrees with defendants that plaintiffs' sixth amended petition is not pled

with sufficient particularity. The use of "and/or" phraseology and lumping of all defendants together into one category results in the reader being unable to determine the exact theory of liability as to each separate defendant. Although plaintiffs complain that they would have to assert 50 separate sets of allegations as to each defendant, the Court believes that this may be necessary under the facts of this case.

Instead of granting the motion to dismiss, however, the Court finds the better course of action would be to allow plaintiffs to file a motion for leave to file an amended complaint, setting out in specific detail (in compliance with Iqbal and Twombly) their theory of the case as to each defendant. Defendant U.S. Bank National Association's motion to dismiss (Doc. No. 29) will be **DENIED WITHOUT PREJUDICE** to its reassertion if plaintiffs' are unable to meet the pleading standards of Iqbal and Twombly. Defendant Chase's Motion for More Definite Statement (Doc. No. 149) will be **GRANTED**. Plaintiffs' motion for leave to file an amended complaint shall be filed on or before **JUNE 30, 2011.**

**VI.      Wilmington Trust Company's Motion to Dismiss (Doc. No. 178), The Moving FirstPlus Trusts' Motion to Dismiss Plaintiffs' Petition for Lack of Personal Jurisdiction (Doc. No. 239), The Moving Empire Funding Trusts' Motion to Dismiss Plaintiffs' Petition for Lack of Personal Jurisdiction (Doc. No. 241), and Cityscape Home Loan Owner Trusts' and Trustee's Motion to Dismiss Plaintiffs' Complaint for Lack of Jurisdiction (Doc. No. 246)**

These four pending motions raise nearly identical issues, and the plaintiffs filed one omnibus response to all four (see Doc. No. 256). Defendants filed one omnibus reply (see Doc. No. 287). The Court will also consider the issues raised in all four motions together.

A.      Standing (Doc. Nos. 178 and 246)

For the same reasons as discussed previously in relation to its analysis of the other defendants' motions to dismiss for lack of standing (Doc. Nos. 12, 124, 142, and 172), defendants' motions (Doc. Nos. 178 and 246) will be **DENIED** on this ground. As discussed previously, plaintiffs shall file a motion for leave to file an amended complaint designating additional class representatives on or before **June 30, 2011.**

B.    Iqbal/Twombly Pleading Standards (Doc. Nos. 178 and 246)

For the same reasons as discussed previously in relation to its analysis of the other defendants' motions to dismiss and/or for more definite statement (Doc. Nos. 29 and 149), these motions (Doc. Nos. 178 and 246) will be **DENIED WITHOUT PREJUDICE** to their reassertion if plaintiffs' are unable to meet the pleading standards of Iqbal and Twombly. Plaintiffs' motion for leave to file an amended complaint shall be filed on or before **JUNE 30, 2011.**

C.    Personal Jurisdiction (Doc. Nos. 178, 239, 241, and 246)

All moving defendants assert that they are not subject to personal jurisdiction in this Court, primarily for the same reasons as the Defendant Moving Trusts (see Doc. No. 31 and Order regarding same, above).   The Court finds that the differences between the moving defendants as set out in their motions and the affidavits attached to same (Doc. No. 178, Ex. 1; Doc. No. 239, Ex. 1; Doc. No. 241 Ex. 1, and Doc. No. 246, Ex. 1) do not mandate a different result than the Court's analysis of personal jurisdiction in relation to the defendant Moving Trusts, above.   Although defendants assert that their servicers are independent contractors rather than agents, this Court concurs with Judge Smith that the label used in the parties' agreements with one another is not determinative of the legal relationship between the entities. See Gilmor, 2011 WL 111238, *4.  For the same reasons as stated earlier in relation to its analysis of the Moving Trusts' motion to dismiss (Doc. No. 31), the Court will **DENY** the pending motions to dismiss for lack of personal jurisdiction (Doc. Nos. 178, 239, 241, and 246).

D.    Insufficiency of Service (Doc. No. 178)

Defendant Wilmington Trust Company ("Wilmington") argues that plaintiffs failed to allege whether it was being sued in its individual or trustee capacity.  Defendant Wilmington further argues that the summons and return of service are not specific as to the capacity in which Wilmington was served.  Defendant Wilmington, therefore, argues that plaintiffs'

sixth amended petition should be dismissed for insufficient service pursuant to Fed. R. Civ. P. 12(b)(4) and (5). In response (Doc. No. 256), plaintiffs indicate that since the filing of the motion to dismiss, defendant Wilmington has now been served in its capacity as Trustee for the Empire Funding Home Loan Owner Trusts, the Cityscape Home Loan Owner Trusts, and the FirstPlus Home Loan Owner Trusts, making this part of Wilmington's motion to dismiss moot. Defendant Wilmington did not file reply suggestions to this motion.

Accordingly, for the reasons stated by plaintiffs, defendant Wilmington's motion to dismiss for insufficiency of service (Doc. No. 178) is **DENIED AS MOOT.**

## VII. Conclusion

Therefore, for the foregoing reasons,

(1)    Defendants' Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction (Doc. No. 31) is **DENIED**;

(2)    Plaintiffs' Motion for Leave to File Sur-Reply to Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 163) is **DENIED**;

(3)    Various Defendants' Motions to Dismiss for Lack of Standing (Doc. Nos 12, 124, 142, and 172) are **DENIED**;

(4)    Plaintiffs' Motion for Extension of Time to File a Response to Doc. No. 235 (Doc. No. 245) is **GRANTED**;

(5)    Defendant Sovereign Bank's Motion to Dismiss Plaintiffs' Complaint as Preempted by Federal Law (Doc. No. 14) is **DENIED**;

(6)    Plaintiffs' Motion for Leave to File Sur-Reply to Motion to Dismiss Based on Preemption (Doc. No. 161) is **DENIED**;

(7)    Defendant U.S. Bank National Association's Motion to Dismiss Plaintiffs' Complaint (Doc. No. 29) is **DENIED WITHOUT PREJUDICE** to its reassertion upon the filing of an amended complaint;

(8)    Defendant JPMorgan Chase Bank, N.A., as Former Trustee's Alternative Motion for More Definite Statement (Doc. No. 149) is **GRANTED**;

(9)    Wilmington Trust Company's Motion to Dismiss (Doc. No. 178) is **DENIED IN PART, DENIED WITHOUT PREJUDICE IN PART, AND DENIED AS**

**MOOT IN PART**;

(10)    The Moving FirstPlus Trusts' Motion to Dismiss Plaintiffs' Petition for Lack of Personal Jurisdiction (Doc. No. 239) is **DENIED**;

(11)    The Moving Empire Funding Trusts' Motion to Dismiss Plaintiffs' Petition for Lack of Personal Jurisdiction (Doc. No. 241) is **DENIED**;

(12)    Cityscape Home Loan Owner Trusts' and Trustee's Motion to Dismiss Plaintiffs' Complaint for Lack of Jurisdiction (Doc. No. 246) is **DENIED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**; and

(13)    Plaintiffs are directed to file a motion for leave to file an amended complaint on or before **JUNE 30, 2011**, addressing the concerns outlined in this Order.

**IT IS SO ORDERED.**


Dated:   06/09/11                          /s/ FERNANDO J. GAITAN, JR.
Kansas City, Missouri                 Fernando J. Gaitan, Jr.
                                       Chief United States District Judge